IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: **08-61673-CIV- DIMITROULEAS**

IRIS TRICE and LOUIS TRICE,
Her husband,

    Plaintiffs,

vs.

INTERSTONE/PAH PARTNERS, LP d/b/a
Wyndham Fort Lauderdale Airport Hotel, a foreign
Corporation; FT. LAUDERDALE OWNER, LLC,
d/b/a Wyndham Ft. Lauderdale Airport Hotel,
a foreign corporation; FT. LAUDERDALE
MANAGER, INC., a foreign corporation; COLUMBIA
SUSSEX CORPORATION, a foreign corporation;
and PROLOCK AND SAFE CORPORATION, a
Florida corporation;  CERRAJERIA ALES, INC.,
d/b/a PROLOCK AND SAFE, a Florida
corporation,

    Defendants.

_____/

**COLUMBIA SUSSEX CORPORATION AND FT. LAUDERDALE
OWNER, LLC'S, MOTION FOR PARTIAL SUMMARY JUDGMENT**

    Comes Now the Defendants, Columbia Sussex Corporation and Ft. Lauderdale Owner, LLC, d/b/a Wyndham Ft. Lauderdale Airport Hotel (collectively "**Defendants**"), by an through the undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.5, hereby file their Motion for Partial Summary Judgment and state as follows:

**RELIEF REQUESTED**

1.Columbia Sussex and Fort Lauderdale Owner, LLC hereby request this Court enter Partial Summary Judgment in favor of Defendants regarding the causes of action asserted against both Columbia Sussex and Fort Lauderdale Owner, LLC. Specifically, a determination by this Court that the Plaintiff[1] has failed, as a matter of law, to plead any cause of action against either Defendant for vicarious or derivative liability.

2.The pleadings establish that there is no disputed issue as to any material fact regarding the insufficiency of the pleadings.

3.The determination of whether a pleading or motion is legally sufficient is a question of law to be determined by the court. *See* Mercedes Lighting and Elec. Supply, Inc. v. State, Dept. of General Services, 560 So.2d 272, 277 (Fla. 1st DCA 1990) *citing* Donaldson v. Clark, 819 F. 2d 1551, 1556 (11th Cir. 1987).

**PROCEDURAL HISTORY**

4.On or about July of 2008 this case was originally filed in circuit court in Hampton, Virginia.

5.On October 16, 2008, the case was transferred to the United States District Court, Southern District of Florida.

6.On January 15, 2009, the Plaintiff was granted leave to file an Amended Complaint.

7.On March 17, 2009, Plaintiff was granted leave to file a Second Amended Complaint.

---

[1] Unless specifically noted, the Plaintiffs, Iris Trice and Louis Trice, will be collectively referred to as "**Plaintiff**" throughout this motion.

8. On <u>January 25, 2010</u>, Plaintiff was granted leave by this Court to file a Third Amended Complaint.

9. Plaintiff's Third Amended Complaint was filed on the deadline for amending pleadings. A copy of the Third Amended Complaint is attached hereto as **Exhibit** "**A**."

10. On <u>June 28, 2010</u>, Plaintiff filed its Expert Witness Disclosure (non-medical) (Document 132).

11. Trial is presently scheduled for the two-week docket beginning <u>September 27, 2010</u>.

## STATEMENT OF MATERIAL FACTS

12. The only true undisputed fact in this matter is that all the facts and allegations surrounding this incident are disputed.

13. The parties agree that the Plaintiff, Ms. Trice, was staying at the Ft. Lauderdale Hilton Hotel when she was injured on a door leading into the vending room on the eighth floor. However, the factual allegations surrounding the injury vary greatly depending on the party.

   a. <u>Plaintiff, Iris Trice</u>: testified that there were no signs and no warnings that the Hotel was under renovation at the time of the incident. [Trice 96, 21][2] Ms. Trice testified that although the vending room door had no glass in it, she did not notice this fact until after she opened the door, entered the vending room, and then re-opened the door to exit. [Trice 98, 4-7 and 99, 8-10] Ms. Trice claims she did not see this arguably open and obvious condition until the last second when the door was closing toward her.

---

[2]Depositions are cited using the deponent's last name, followed by the page and line, e.g. (Trice 9,2). If more than one deposition for the deponent, the date will be included, e.g. (4/25/10 Trice 9,2).

[Trice 102, 8-10]  At that point, Ms. Trice allegedly dropped the contents in her left hand, raised her left arm to block her face, and fell through the opening. [Trice 102, 8-14]  The amount of contributory fault to be assessed to the Plaintiff for the incident is a fact question for the jury.  A copy of Ms. Trice's deposition transcript is attached hereto as **Exhibit** "**B**."

b. <u>Defendant, ProLock and Safe</u>: testified that they were hired to install doors and hardware for the remodel project. [Gonzalez 40, 21-25 and 41, 1-2]  ProLock was not present at the time of the injury, and was unaware of the injury until they were informed of the lawsuit. [Pimental 100, 9-12]  It is ProLock's testimony that they were hired to install doors and hardware and that is all they did. [Gonzalez 68, 22-25 and 69, 1-5]  According to ProLock, they were specifically told to hang the door upon which Ms. Trice was injured. [Pimental 65, 11-15]  Further, Prolock employee, Mr. Pimental alleges that he told the superintendant of the project, Sam Campbell, that the door was dangerous, but Mr. Campbell told him to hang it anyway. [Pimental 68, 1-7]  That said, ProLock's president, David Gonzales, acknowledges that ProLock is responsible for the safety of the work they perform. [Gonzalez 103, 12-16]  The amount of comparative fault to be apportioned to ProLock is a question of fact for the jury.  The depositions of ProLock employees David Gonzales, Andy Pimental and Yandry Veloz are attached hereto as **Exhibits** "**C,**" "**D,**" and "**E**" respectively.

c. <u>Defendant, Columbia Sussex</u>: Sam Campbell was the superintendant on site for the remodel project and refuted the statements of both the Plaintiff and Prolock. Mr. Campbell testified that there were signs and notifications to the guests placed all over the Hotel informing of the remodel project. [4/29/10 Campbell 46-47, 6-4]  Mr. Campbell also testified that the allegation of Prolock that he instructed Prolock to hang a dangerous door was a "damn lie" and they never had that conversation. [4/29/10 Campbell 155, 1-8]  Rather, it was the testimony of Columbia Sussex that no one instructed Prolock to hang the door in that condition, and they were unaware the door was hung at that time by Prolock. [4/29/09 Campbell 154, 22-25 and 155, 1 and 121,10-21]  Ms. Leslie Beck, the project coordinator, testified that pursuant to the construction meeting minutes, Prolock was not supposed to be working on the eighth floor, and was unaware any work was being performed on the eighth floor.[3]  Ms. Beck testified that the door should not have been hung in that condition, and Prolock would "never" have been told to hang it in that condition.  The amount of comparative fault to be apportioned to Columbia Sussex is a question of fact for the jury.  The deposition of Sam Campbell is attached hereto as **Exhibit "F."**

---

[3] Ms. Beck's deposition was taken over two days, June 30, 2010 and July 1, 2010.  The deposition was ordered and will be filed with citations to the deposition upon receipt

d.  <u>Defendant, Ft. Lauderdale Owner LLC</u>:  was the owner of the Hotel.  Eric Kiddle was the general manager of the Hotel at the time of the incident.  [Kiddle 10, 17]  Ft. Lauderdale Owner worked in concert with Columbia Sussex to ensure the safety and comfort of the guests during the remodel of the Hotel. [Kiddle 33, 21-25 and 34, 1-3 and 4/29/10 Campbell 45, 12-18 and 46, generally]  Mr. Kiddle testified to the efforts taken by the Hotel and the construction department to ensure the safety of the guests. [Kiddle 111, 7-19]  Specifically, he testified that signs were posted at all entrances, on all floors, at the elevator bays, and instructed all front desk personnel to inform incoming guests. [Kiddle 111, 14-19]  Mr. Kiddle also testified that a letter was sent to US Airways, Plaintiff's employer, informing them of the remodel project prior to the incident happening. [Kiddle 112,24-25 and 113, 1]  Mr. Kiddle further testified that upon learning of the incident, he had the door removed from the hinges and checked every other floor to make sure there were no other vending room doors hung; there were not. [Kiddle 86 14-19]  Mr. Kiddle testified that this was the only vending room door hung at that time. [Kiddle 107, 12-15]  None of the doors were re-hung until the doors were complete, with glass. [Kiddle 103, 10-14] Timothy Barnett was the rooms division manager and was there the night of the incident.[4]  He brought the EMT's to Ms. Trice. Mr. Barnett corroborated Mr. Kiddle's testimony regarding the vending room door – that it was the only one hung and it was removed the next day. More

---

[4] The deposition of Timothy Barnett occurred on July 1, 2010.  The deposition was ordered and will be filed with the Court, with citations to the transcript, immediately upon receipt.

{Firm\8028\001\00422138.DOC}                                        6

        importantly, all construction work was coordinated with Mr. Kiddle at the weekly meetings, and there was no discussion that the vending room doors would be hung that week. There were no other incidents of work being done without the Hotel's knowledge. The amount of comparative fault to be apportioned to Ft. Lauderdale Owner is a question of fact for the jury. The deposition of Eric Kiddle is attached hereto as **Exhibits "G."**

14. The varying versions of what transpired leading up to the incident, and the varying testimony as to the proximate cause of the incident exemplify the need for the jury to weigh the facts and apportion the fault to the appropriate party in this case.

## LEGAL ARGUMENT

### I.  Vicarious or Derivative Liability Must Be Specifically Pled

15. Pursuant to Rule 8(a)(2) and (3), Federal Rules of Civil Procedure, "A pleading that states a claim for relief must contain:… (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought…."

16. The Plaintiff's Third Amended Complaint alleges a cause of action against Ft. Lauderdale Owner as follows:

> COUNT I NEGLIGENCE AGAINST DEFENDANT, OWNER
>
> Plaintiffs adopt and reallege paragraphs 1 through 8, as if specifically set forth herein and further alleges as follows:
>
> 9. At all times material hereto, Defendant, OWNER, owed Plaintiff a duty to maintain said premises in a reasonably save condition.
>
> 10. At all times material hereto, Defendant, OWNER, owed Plaintiff a duty to refrain from actions and/or inactions which would injure Plaintiff and to warn her of dangerous conditions on the premises.

11. At all times material hereto, Defendant, OWNER, owed Plaintiff a duty to correct and/or repair any and all dangerous conditions that Defendant knew or in the exercise of reasonable care, should have known, existed on the premises.

12. Defendant, OWNER, breached the duty owed to Plaintiff, IRIS TRICE, by negligently failing to reasonably maintain its premises and by negligently failing to warn Plaintiff of the dangerous condition.

13. Defendant, OWNER, breached the duty owed to Plaintiff by committing the following negligent acts and/or omissions:

a.   Failing to inspect the subject door and/or surrounding area where Plaintiff was injured; and/or

b.   Failing to detect the broken and/or defective door; and/or

c.   Allowing a broken an/or defective door to remain in place; and/or

d.   Failing to correct and/or repair the subject door; and/or

e.   Failing to replace the glass on the door; and/or

f.   Failing to warn Plaintiff of the existence of this dangerous condition; and/or

g.   Failing to adequately demarcate or cover the defective door; and/or

h.   Failing to maintain an adequate number of staff members and/or employees to monitor and maintain said premises; and/or

i.   Failing to maintain an adequate number of staff members and/or employees to monitor and maintain said premises; and/or

j.   Failing to adequately maintain the subject premises, specifically the area in and around the refreshment area of the 8th floor; and/or

k.   Was otherwise negligent in the maintenance, inspection and repair of said premises.

14. At all times material hereto, Defendant, OWNER, created, knew, or in the exercise of reasonable care, should have known of the existence of this hazardous condition and/or the condition had

existed for a sufficient length of time that Defendant knew or should have known of the condition and could have easily remedied the problem.

15. As a direct and proximate result of Defendant's negligence, Plaintiff, IRIS TRICE, fell through the defective door, suffering bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money and aggravation of a previously existing condition.  The losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future.

16.  As a result of the accident, Plaintiff, LOUIS TRICE, has lost the services, society, care, comfort, and consortium of his wife, Plaintiff, IRIS TRICE,  previously performed.

WHEREFORE, Plaintiffs, IRIS TRICE and LOUIS TRICE, her husband, demand judgment against Defendant, OWNER,  for compensatory damages that exceed the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. Plaintiffs further demand a trial by jury of all issues triable as of right by a jury.

17.  The Plaintiff's Third Amended Complaint alleges a cause of action against

Columbia Sussex as follows:

### COUNT II NEGLIGENCE AGAINST DEFENDANT,

### COLUMBIA

Plaintiffs adopt and reallege paragraphs 1 through 8, as if specifically set forth herein and further alleges as follows:

17. At all times material hereto, Defendant, COLUMBIA,  owed Plaintiff a duty  to maintain said premises in a reasonably safe condition.

18. At all times material hereto, Defendant, COLUMBIA, owed Plaintiff a duty to refrain from actions and/or inactions which would injure Plaintiff and to ware her of dangerous conditions on the premises.

19. At all times material hereto, Defendant, COLUMBIA, owed Plaintiff a duty to correct and/or repair any and all dangerous

conditions that Defendant knew or in the exercise of reasonable care, should have known, existed on the premises.

20. Defendant, COLUMBIA, breached the duty owed to Plaintiff, IRIS TRICE, by negligently failing to reasonably maintain its premises and by negligently failing to warn Plaintiff of the dangerous condition.

21. Defendant, COLUMBIA, breached the duty owed to Plaintiff by committing the following negligent acts and/or omissions:

a.  Failing to inspect the subject door and/or surrounding area where Plaintiff was injured; and/or

b.  Failing to detect the broken and/or defective door; and/or

c.  Allowing a broken and/or defective door to remain in place; and/or

d.  Failing to correct and/or repair the subject door; and/or

e.  Failing to replace the glass on the door; and/or

f.  Failing to warn Plaintiff of the existence of this dangerous condition; and/or

g.  Failing to adequately demarcate or cover the defective door; and/or

h.  Failing to place warning signs, cones, or some other device in order to warn Plaintiff of the dangerous condition; and/or

i.  Failing to maintain an adequate number of staff members and/or employees to monitor and maintain said premises; and/or

j.  Failing to adequately maintain the subject premises, specifically the area in and around the refreshment area of the 8th floor; and/or

k.  Was otherwise negligent in the maintenance, inspection and repair of said premises.

22. At all times material hereto, Defendant, COLUMBIA, created, knew, or in the exercise of reasonable care, should have known of the existence of this hazardous condition and/or the condition had existed for a sufficient length of time that Defendant knew or should

> have known of the condition and could have easily remedied the problem.
>
> 23. As a direct and proximate result of Defendant's negligence, Plaintiff, IRIS TRICE, fell through the defective door, suffering bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money and aggravation of a previously existing condition. The losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future.
>
> 24. As a result of the accident, Plaintiff, LOUIS TRICE, has lost the services, society, care, comfort, and consortium of his wife, Plaintiff, IRIS TRICE, previously performed.
>
> WHEREFORE, Plaintiffs, IRIS TRICE and LOUIS TRICE, her husband demand judgment against Defendant, COLUMBIA, for compensatory damages that exceed the sum or value of seventy-five thousand dollars ($75.000.00), exclusive of interest and costs. Plaintiffs further demand a trial by jury of all issues triable as of right by a jury.

18. There is no allegation against either Ft. Lauderdale Owner or Columbia Sussex for vicarious or derivative liability anywhere in the Third Amended Complaint. "Florida law is clear that in order to pursue a vicarious liability claim, the claimant must ***specifically plead*** it as a separate cause of action." General Asphalt Company, Inc. v. Bob's Barricades, Inc., 22 So. 3d 697, 699 (Fla. 3d DCA 2009), *citing* Goldschmidt v. Holman, 571 So. 2d 422 (Fla. 1990) (emphasis added).

19. Despite its failure to plead a cause of action for vicarious or derivative liability in any of the four versions of their Complaint, it is now apparent that Plaintiff intends to argue to the jury that the owners or operators of the Hotel should be held liable not for just their own purported negligence, but also the negligence of the Co-Defendant, Prolock.

20. Plaintiff's Expert Witness Disclosure (Document 132), for the first time, makes an allegation filed with the Court that the owners or operators of the Hotel should be held liable for the actions of Prolock. Specifically, in the Summary of Opinions, page two of Document 132, Mr. Salisbury opines:

> i. The Owners and Operators of the Hotel were ultimately responsible for the subject incident.
> ….
> v. The Owners and Operators of the Hotel are ultimately responsible for the subcontractors on the construction project.
> vi. The Owners and Operators of the Hotel maintained control of the premises and control over the construction project.
> vii. The Owners and Operators of the Hotel maintained control over the subcontractors.

21. The case law is clear that absent the appropriate pleading, there can be no allocation to a defendant for vicarious or derivative liability; the issue should never even make it to the jury.

22. In Goldschmidt, *the trial court refused to permit the jury to consider* whether Goldschmidt was liable for Soud's (Goldschmidt's agent) alleged negligence because the plaintiff's complaint did not specifically allege a cause of action for vicarious liability. The appellate court reversed the trial court, stating that the complaint did not need to specifically allege that the principal was responsible for the acts of the agent. The Florida Supreme Court reversed, and upheld the trial court's initial ruling. The Supreme Court held:

> The threshold issue presented is whether a principal's vicarious liability for the negligence of another is a separate cause of action that must be specifically pled in the complaint. We find that this issue has already been decided by this court adversely to respondents in Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126 (Fla. 1985), in which ***we held that a defendant could not be found liable under a theory of vicarious liability that was not specifically pled.*** Goldschmidt, 571 So. 2d at 423. (emphasis added)

23. In <u>General Asphalt</u>, like the present case, the plaintiff "alleged in her complaint separate counts for each defendant and did not include a claim for vicarious liability." <u>General Asphalt</u> at 699. Accordingly, General Asphalt could not be held vicariously liable for the actions of Bob's Barricades.

24. Likewise, in <u>Shah v. Bland</u>, 973 So. 2d 1188 (Fla. 2d DCA 2008), one of the defendants in an auto accident case wanted to attribute vicarious liability to the automobile's owner. Generally, the owner of a dangerous instrumentality is held vicariously liable when the driver of the car is negligent. *See* <u>Vreeland v. Ferrer</u>, 28 So.3d 906, 908 (Fla. 2d DCA 2010) (stating that "in Florida the owner of a "dangerous instrumentality" who has expressly or impliedly consented to its operation by another is vicariously liable for injuries or damages caused by its negligent operation"). However, in <u>Shah</u>, the court never had to reach that determination because the party never specifically raised vicarious liability as a separate allegation in the pleadings. The court held "[b]ecause this issue was never pleaded nor preserved, we affirm the trial court's entry of final judgment awarding [Plaintiff] $290,000 in damages without any reduction for her vicarious liability." <u>Shah</u> at 1191.

25. The responsibility of the owner of a dangerous instrumentality, even more so than the owner of real property, is generally considered a non-delegable duty for which the owner of the vehicle can be held vicariously liable for the negligence of the driver. <u>Aurbach v. Gallina</u>, 753 So.2d 60, 62 (Fla. 2000) (holding that "under the dangerous instrumentality doctrine, an owner who gives authority to another to operate the owner's vehicle, by either express or implied consent, has a non-delegable obligation to ensure that the vehicle is operated safely").

26. In <u>Bloom v. Dorta-Duque</u>, 743 So. 2d 1202, (Fla. 3d DCA 1999), the Third DCA likewise found that a claim for vicarious liability must be specifically pleaded. In <u>Bloom</u>, the appellate court followed the well established Florida law that a defendant cannot be found liable under a theory that was not specifically pled. The appellate court held that because there was no allegation in the pleadings that could have imposed vicarious liability on Bloom, the trial court erred in allowing Dorta-Duque to contend Bloom was vicariously liable to the jury.

27. In the present case, there is no specific allegation in the Third Amended Complaint that Ft. Lauderdale Owner is vicariously liable for the acts of Prolock. There is no specific allegation in the Third Amended Complaint that Columbia Sussex is vicariously liable for the acts of Prolock. The pleading asserts a direct negligence claim against each for their individual negligence which may have contributed to the accident. Accordingly, this Court can never get to the analysis of whether Ft. Lauderdale Owner or Columbia Sussex should be held vicariously liable for Prolock's negligence, because that theory was not specifically pleaded by the Plaintiff, and is therefore not properly before the Court.

## II.     Florida Law Has All But Extinguished Joint and Several Liability

28. The shift away from Joint and Several Liability began in 1986 (Tort Reform and Insurance Act of 1986) and culminated with the changes to Florida Statutes, Section 768, et al, in April of 2006. Pursuant to Governor Bush's April 26, 2008, press release, "[t]he repeal of Florida's joint and several liability law ensures people and businesses pay for the injury or loss they cause according to responsibility, rather than financial ability." *See* <u>Press Release, Office of the Governor, April 26, 2006</u>; attached hereto as **Exhibit** "**H**."

29. The change in the law exemplifies why a claim for vicarious liability must be specifically pleaded. While no defendant should be found liable under a theory which has not been specifically pleaded, that is particularly true of a cause of action which has been all but abolished in the state of Florida.

30. In the present case, Plaintiff may not seek compensation from Ft. Lauderdale Owner for injuries caused by the subcontractor Prolock, seeking joint and several liability under a theory of vicarious or derivative liability as the premises owner, when such a claim was never pleaded in any of their four versions of their Complaint. Likewise, Columbia Sussex cannot be held jointly and severally liable with Prolock under a theory of vicarious or derivative liability as the premises owner, when such a claim was never pleaded in any of their four versions of their Complaint.

31. There is no exception to the pleading requirements under Federal Rules of Civil Procedure, Rule 8, that a claim for joint and several liability need not be pleaded. Likewise, there is no exception under Florida Statutes 768.81 when seeking to hold the owner of the real property liable for the negligence of a subcontractor thereon. Rather, the Rules, the statutes and the caselaw hold the cause of action must be specifically pleaded. Plaintiff failed to plead such a cause of action,

### III.   Plaintiff Should Not Be Allowed to Amend Their Pleadings

32. Plaintiff should not, at this late date, be allowed to amend its pleadings to seek joint and several liability against any of the defendants.

33. In order to be allowed to amend its pleading to assert a new cause of action, this Court must determine (1) whether Plaintiff satisfies the Federal Rule of Civil Procedure 16(b) good cause analysis and (2) whether Plaintiff satisfies the Federal Rule of Civil Procedure 15(a) analysis. In Stewart v. Hooters of America, Inc., 2007 WL 3528685 (M.D. Fla. Nov. 15, 2007), Judge Kovachevich held:

> In Sosa v. Airprint Systems, Inc., 133 F.3d 1417 (11th Cir. 2007), the 11th Circuit denied a motion for leave to amend because the movant failed to argue good cause and failed to pursue the case with diligence. The 11th Circuit considers three factors when deciding diligence: (1) if the moving party neglected to determine facts before filing pleadings or within discovery, (2) if the subject matter of the motion to amend was readily available to the moving party, and (3) if the moving party delayed filing the motion to amend.

To establish good cause the party must show that the scheduling deadlines could not have been met despite her diligence as to the matter that is the subject of the motion to amend. Sosa, 133 F.3d at 1418.

34. In the present case, Plaintiff has known who the owner of the property was since filing the suit in Hampton, Virginia in July of 2008.

35. Plaintiff amended its Complaint in January of 2009, and amended the Complaint again in March of 2009, adding the subcontractor, Prolock. At this time the Plaintiff could have asserted a cause of action against Ft. Lauderdale Owner or Columbia Sussex for vicarious liability for any alleged negligence of Prolock, but failed to do so.

36. The deadline to amend pleadings was January 22, 2010, over 6 months ago. On January 22, 2010, Plaintiff amended its Complaint a third time, but still failed to assert any claim for vicarious or derivative liability.

37. Accordingly, Plaintiff cannot overcome the Rule 16(b) analysis, and there is no basis to undergo the Rule 15(a) analysis. There is no reason the Plaintiff could not have asserted a claim for vicarious liability prior to January 22, 2010.

38. If Plaintiff could show good cause and that she pursued the case with diligence, a Rule 15(a) analysis would be required. Pursuant to Rule 15(a), leave to amend is freely given in the absence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment. *See* Forman v. Davis, 371 U.S. 178, 182 (1962).

39. In the present case, there is both undue delay and undue prejudice to the Defendants if Plaintiff is allowed to amend its complaint a fourth time to assert new causes of action against the Defendants considering all of the depositions that have transpired. The Defendants would need to reopen discovery to enable them to conduct supplemental depositions and an opportunity to issue discovery on the new causes of action to prepare their defense prior to the September trial date.

## **CONCLUSION**

Defendants should be awarded partial summary judgment on the purely legal issue that Plaintiff has failed to plead a claim of vicarious or derivative liability against Ft. Lauderdale Owner, LLC or Columbia Sussex. Accordingly, no testimony, expert or otherwise should be argued to a jury and each defendant should only be held liable for their comparative fault which may have attributed to the injury to Ms. Trice.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 2nd day of July, 2010, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Alan Goldfarb, Esquire, and Liah C. Catanese, Esquire, Alan Goldfarb, P.A., 100 S.E. Second Street, 45th Floor, Miami, FL 33131 agoldfarb@goldfarbpa.com; lcatanese@goldfarbpa.com; Robert F. Goodrich, Esquire, The Law Office of Beth-Ann Tansey, 4000 Hollywood Blvd., Suite 501 South, Hollywood, FL 33021 Robert.Goodrich@thehartford.com; John Gaides, Esquire, Joynes & Gaides, 564 Lynnhaven Parkway, Virginia Beach, VA 23452 john@joyneslaw.com; and to David W. Hearn, Esquire, Sands, Anderson, Marks & Miller, P.C., 801 East Main Street, Richmond, VA 23452 dhearn@sandsanderson.com this 2nd day July, 2010.

    /S/ Bradley S. Bell_____
BRADLEY S. BELL, ESQ.
Florida Bar No.: 0184306
DOUGLAS J. COLLINS, ESQ.
Florida Bar No.: 25838
DANIEL A. NICHOLAS, ESQ.
Florida Bar No.: 847755
Cruser Mitchell Nicholas & Bell, LLP
501 E. Kennedy Blvd., Suite 730
Tampa, FL 33602
(813) 637-9200 (Telephone)
(813) 637-9230 (Facsimile)
bbell@cmlawfirm.com
dcollins@cmlawfirm.com
dnicholas@cmlawfirm.com
Attorneys for Defendants
Ft. Lauderdale Owner, LLC d/b/a
Wyndham Ft. Lauderdale Airport Hotel
& Columbia Sussex Corporation

/cel